UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X          **Case No.: 1:23-cv-9192**
CARMEN CHAI,

                             Plaintiff,          **COMPLAINT**

          -against-          **PLAINTIFF DEMANDS
TRIAL BY JURY**

NEW YORK UNIVERSITY, NYU COLLEGE OF
DENTISTRY, STEVEN RESNICK, DDS, COLLEEN A.
WATSON, DDS, NINETTE LYUBARSKY, DDS, MAYA
ARDON, LESLIE SMITHEY, DDS, and DOES 1-10,

                             Defendants.
-------------------------------------------------------------------X

       Plaintiff CARMEN CHAI ("Plaintiff"), by her attorneys, LAW OFFICE OF TODD J.

KROUNER P.C., respectfully alleges upon information and belief:

**PRELIMINARY STATEMENT**

       1.     Plaintiff is a 27-year-old woman of Malaysian descent, who aspired to become a

dentist. Plaintiff graduated from NEW YORK UNIVERSITY ("NYU") in 2018, and in 2019,

enrolled as dental student at the NYU COLLEGE OF DENTISTRY (the "College of Dentistry").

       2.     At all times relevant hereto, Plaintiff had a documented history of Attention

Deficit Hyperactivity Disorder ("ADHD"). ADHD is a recognized disability under the

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., as amended (the "ADA").

ADHD is also a recognized disability under Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 797 ("Section 504").

       3.     In or about December 2020, Plaintiff requested, and was granted, reasonable

accommodations for her disability by the College of Dentistry. Her accommodations consisted of

extended time during testing and examinations.

4. During her third year at the College of Dentistry, Plaintiff was subjected to race, gender, and disability discrimination by NYU and the College of Dentistry, including their employees and/or agents, including, inter alia, the Senior Group Practice Director ("SGPD"), STEVEN RESNICK, DDS ("Dr. Resnick"), the Group Practice Director ("GPD"), COLLEEN A. WATSON, DDS ("Dr. Watson"), MAYA ARDON, Director of Student Affairs ("Ms. Ardon"), LESLIE F. SMITHEY, DDS, MPH, Assistant Dean for Academic Affairs ("Dr. Smithey"), and then-fourth-year student at the College of Dentistry, NINETTE LYUBARSKY ("Ms. Lyubarsky"), (collectively, the "Individual Defendants").

5. Ms. Lyubarsky harassed, hazed, intimidated, and discriminated against Plaintiff on an ongoing basis. Plaintiff made multiple complaints and requests for remediation and to be re-assigned to a different fourth-year student at the College of Dentistry, and to the administrators at the College of Dentistry. In response, Defendants not only ignored Plaintiff's requests, but also retaliated against Plaintiff when she complained of Ms. Lyubarsky' hostile, abusive, discriminatory, and unprofessional behavior.

6. On or about May 31, 2022, Defendants expelled Plaintiff from the College of Dentistry, thus destroying her prospects of becoming a dentist.

7. Plaintiff was unlawfully discriminated against by NYU, the College of Dentistry, and the Individual Defendants on the basis of her (a) race; (b) gender; and (c) disability. In so doing, Defendants discriminated against Plaintiff in violation of (a) the ADA; (b) Section 504; (c) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., as amended ("Title IX"); (d) New York Executive Law § 296, et seq. ("NYSHRL"); and (e) New York City

2

Administrative Code § 8-107 ("NYCHRL"). In addition, Defendants unlawfully retaliated against Plaintiff in violation of the ADA, Section 504, Title IX, NYSHRL and NYCHRL.

8.      In addition, NYU and the College of Dentistry breached their contract with Plaintiff where they failed to follow their established rules and guidelines concerning Plaintiff's dismissal from the College of Dentistry.

9.      Consequently, Plaintiff seeks compensatory damages, including economic and non-economic damages, liquidated damages, punitive damages, and her reasonable costs, attorneys' and experts' fees that she has and continues to incur from Defendants' misconduct.

## THE PARTIES

10.      Plaintiff is a resident of the State of California. At all times relevant hereto, Plaintiff was a student at the College of Dentistry.

11.      NYU is a private university, duly organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

12.      The College of Dentistry is the dentistry school of NYU, duly organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

13.      At all times relevant hereto, NYU was an educational institution receiving federal financial assistance as defined in 20 U.S.C. § 1681(c).

14.      At all times relevant hereto, the College of Dentistry was an educational institution receiving federal financial assistance as defined in 20 U.S.C. § 1681(c).

15.      Upon information and belief, at all times relevant hereto, Dr. Resnick was and remains the Senior Group Practice Director at the College of Dentistry.

3

16.     Upon information and belief, at all times relevant hereto, Dr. Watson was and remains the Group Practice Director at the College of Dentistry.

17.     Upon information and belief, at all times relevant hereto, Ms. Ardon was and remains the Director of Student Affairs.

18.     Upon information and belief, at all times relevant hereto, Dr. Smithey was and remains the Assistant Dean for Academic Affairs.

19.     Upon information and belief, at all times relevant hereto, Ms. Lyubarsky was a student at the College of Dentistry.

## JURISDICTION

20.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the ADA, Section 504, and Title IX.

21.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff is domiciled in California, Defendants are not domiciled in California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

22.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case and controversy under Article III of the United States Constitution, and Plaintiff's causes of action under state law arise out of the same essential facts as Plaintiff's causes of action under federal law.

23.     Pursuant to the NYCHRL, within ten days after commencement of this action, Plaintiff shall serve a copy of her complaint upon the New York City Commission on Human Rights and Corporation Counsel for New York City.

## FACTUAL ALLEGATIONS

24.     From 2014 until 2018, Plaintiff was a student at the NYU Tandon School of Engineering.

25.     In 2018, Plaintiff graduated from the NYU Tandon School of Engineering with a bachelor's degree in Biomolecular Science.

26.     In November 2015, while at NYU Tandon School of Engineering, Plaintiff was diagnosed with ADHD by a licensed clinical psychologist.

27.     In the Fall of 2019, Plaintiff became a dental student at the College of Dentistry.

28.     On December 29, 2020, while enrolled as a student at the College of Dentistry, Plaintiff submitted her application for extended time during testing and examination to NYU.

29.     On or about January 5, 2021, NYU informed Plaintiff that her application was approved, and that she would receive time and a half for her testing and examinations.

30.     From 2019 through 2021, Plaintiff consistently excelled academically. Plaintiff's grade point average ("GPA") was 3.213 in Fall 2019, 3.214 in Spring 2020, 3.805 in Fall 2020, and 3.852 in Spring 2021.

31.     During the Fall of 2021, Plaintiff grades began to decline. Her GPA for the Fall semester fell to 3.116.

32.     In or about July 2021, Defendants assigned Ms. Lyubarsky, then-fourth-year student, to oversee Plaintiff for the clinical aspect of Plaintiff's education at the College of Dentistry.

33.     Immediately, Ms. Lyubarsky subjected Plaintiff to hazing, discrimination, harassment, and intimidation.

34.     On one instance, Ms. Lyubarsky screamed at Plaintiff in front of patients and fellow students.

35.     On another occasion, Ms. Lyubarsky was verbally abusive and hostile when talking to Plaintiff about patient charting.  Due to Plaintiff's ADHD, she preferred to chart immediately after each appointment.  However, she did not have enough time to complete the task as Ms. Lyubarsky would tell Plaintiff to see next patient and complete their charts at the end of each clinic day.

36.     Ms. Lyubarsky constantly used Plaintiff's ID card to check out expensive dental supplies and equipment. When Plaintiff was informed that some expensive equipment, such as a $1,000 high speed dental hand piece, was missing from the dispensary, Plaintiff refused to provide Ms. Lyubarsky with her ID card.  Ms. Lyubarsky reacted by becoming verbally abusive and hostile toward Plaintiff.

37.     Ms. Lyubarsky was in the habit of leaving Plaintiff alone with patients, without supervision, while Ms. Lyubarsky was drinking coffee with her friends. After Plaintiff finished treating patients, Ms. Lyubarsky would come back and take credit for Plaintiff's work.

38.     When Plaintiff asked Ms. Lyubarsky to stop bullying her, Ms. Lyubarsky acknowledged the institutional hazing that was prevalent at the College of Dentistry, and responded in words or substance: "If I was treated like this by my classmates when I was a third-year student, why can't I treat you the same way?"

39.     As a part of the institutional culture of hazing, hostility, and abuse that was prevalent at the College of Dentistry, another fourth-year dental student, Andrew Jung, told Plaintiff that as a third-year dental student, she was his "slave."

40.     The tension between Plaintiff and Ms. Lyubarsky escalated on or about November 21, 2021, after Ms. Lyubarsky negligently treated an elder patient in the clinic, and dismissed him with an untreated cavity in his tooth.  Plaintiff believed that Ms. Lyubarsky's conduct was highly unprofessional and tantamount to malpractice ("Ms. Lyubarsky's Alleged Malpractice"). Plaintiff reported Ms. Lyubarsky's Alleged Malpractice to Dr. Resnick.

41.     Ten minutes after Plaintiff reported Ms. Lyubarsky's Alleged Malpractice to Dr. Resnick, she was summoned by Dr. Watson, who scolded Plaintiff for reporting her concerns to Dr. Resnick. Dr. Watson complained that as a result of Plaintiff's grievance, Dr. Watson now had a "target on [her] back." Dr. Watson repeatedly told Plaintiff that "what happens in the clinic, stays in the clinic," illustrating the manipulation, hostility, and abuse that Dr. Watson perpetuated, while insisting on Plaintiff's silence to the foregoing.

42.     In February 2022, Dr. Watson asked Plaintiff to sign a "communication waiver" without providing a copy of the waiver to her. When Plaintiff asked to be provided with a copy, Dr. Watson threatened to have Plaintiff failed in her course if the waiver was not signed.

43.     On May 4, 2022, Plaintiff emailed Dr. Watson a request to be excused from her clinical course, due to Plaintiff's need to prepare for the upcoming Clinical Application in Orthodontics Exam. Plaintiff's request was rejected, and Dr. Watson accused Plaintiff of consistently exhibiting "unprofessional" behavior.

44.     ADHD is a mental health disorder that includes a combination of persistent problems, such as difficulty paying attention, hyperactivity, and impulsive behavior.  Adult ADHD can lead to unstable relationships, poor work or school performance, low self-esteem, and other problems. Plaintiff's ADHD makes her particularly susceptible to

hostile environments because of the disabling challenges with emotional regulation that accompany ADHD.

45.     Ms. Lyubarsky's hazing, discrimination, harassment, and intimidation caused Plaintiff difficulty sleeping, isolation, depression, panic-attacks, and loss of appetite, and significantly impacted Plaintiff's academic performance.

46.     Defendants' clear, deliberate indifference to Plaintiff's complaints caused Plaintiff difficulty sleeping, isolation, depression, panic-attacks, and loss of appetite, and significantly impacted her academic performance.

47.     In the Spring of 2022, as a result of Plaintiff's subjection to Defendants' hazing, discrimination, harassment, and intimidation, Plaintiff's GPA for the Spring 2022 semester dropped precipitously to 1.714.

48.     Plaintiff repeatedly asked Defendants to reassign her to a different fourth-year student and a different GPD.

49.     Plaintiff repeatedly asked Dr. Watson to reassign her to a different fourth-year student.

50.     Plaintiff repeatedly asked Ms. Ardon to reassign her to a different fourth-year student and a different GPD.

51.     Plaintiff asked Dr. Smithey to reassign her to a different fourth-year student and a different GPD.

52.     Each of the Defendants were deliberately indifferent and subjected Plaintiff to a hostile educational environment and disparate treatment.

53.     Defendants took no steps to remove Plaintiff from the hostile environment and

implemented no action plan to address Plaintiff's concerns.

54.     Dr. Resnick took no steps to remove Plaintiff from the hostile environment and implemented no action plan to address Plaintiff's concerns.

55.     Dr. Watson took no steps to remove Plaintiff from the hostile environment and implemented no action plan to address Plaintiff's concerns.

56.     Ms. Ardon took no steps to remove Plaintiff from the hostile environment and implemented no action plan to address Plaintiff's concerns.

57.     Dr. Smithey took no steps to remove Plaintiff from the hostile environment and implemented no action plan to address Plaintiff's concerns.

58.     Instead, the College of Dentistry requested that Plaintiff take a leave of absence.

59.     Plaintiff declined that request.

60.     On or about June 2, 2022, Plaintiff was verbally informed via Zoom that she had been expelled from the College of Dentistry.

61.     In a termination letter, dated May 31, 2022 (the "Termination Letter"), Defendants stated that the reason for dismissal was that Plaintiff failed two courses with a grade of F, Orofacial Pain – Neurosensory Disorders and Comprehensive Patient Care; and two courses with a grade of D, Advanced Pediatric Dentistry and Advanced Periodontics.

62.     The Termination Letter ignored the fact that Plaintiff had been permitted to re-take the Orofacial Pain – Neurosensory Disorders examination, and on May 9, 2022 had demonstrated substantial improvement.

63.     The Termination Letter ignored the fact that Plaintiff was in the process of remediating her failed Advanced Periodontics course.

9

64.     On June 7, 2022, Plaintiff submitted her appeal.

65.     On June 21, 2022, Defendants denied Plaintiff's appeal.

66.     At all times relevant hereto, the College of Dentistry had its Academic Standards and Policies for the Predoctoral Program in Dentistry, or Guidelines for Academic Progress, Promotion, and Graduation (the "Academic Policies") available to its dental students. A copy of the Academic Policies is annexed hereto as Exhibit A.

67.     The Academic Policies state that the "faculty of the College evaluate student progress throughout the academic year and provide constructive feedback." Id., p.1.

68.     From September 2021 until Plaintiff's dismissal in May 2022, Plaintiff was not provided with any constructive feedback concerning her academic progress.

69.     The Academic Policies state that "Class Promotions Committees (CPC) meet a minimum of four times a year to monitor student performance and identify at-risk students." Id.

70.     At all times relevant hereto, Plaintiff was never identified as an "at-risk student" by Defendants. Consequently, Plaintiff's student performance was never monitored by the CPC.

71.     The Academic Policies state that when "students are identified as at risk of failing one or more courses, they are placed on Monitored Status and are apprised of resources to assist them." Id.

72.     At all times relevant hereto, Plaintiff was never placed on Monitored Status, nor apprised of any resources to assist her.

73.     The Academic Policies state that students "not making satisfactory progress are placed on "monitored status" and an action plan is developed." Id.

74.     At all times relevant hereto, Defendants developed no action plan for Plaintiff to

remediate her declining grades.

75.     The Academic Policies state that "The Office of Academic Affairs will notify students of any CPC decisions including the need for intervention/actions as a result of the student's academic performance." Id., p. 2.

76.     At all times relevant hereto, Plaintiff received no notification of any CPC decisions, including the need for intervention/actions as a result of her academic performance.

77.     The Academic Policies state that students "who are determined to be deficient in-patient care skills may be placed on a Clinical Mentorship plan as a means to improve in a closely-supervised clinical setting." Id., p. 8.

78.     At all times relevant hereto, Plaintiff was never placed on a Clinical Mentorship plan.

79.     The Academic Policies state that "Monitored Status is an internal designation, which is changed to either *good academic standing* or *academic probation* at the end of the academic year." Id., p. 1 (emphasis in original).

80.     At all times relevant hereto, Plaintiff was never placed on academic probation.

81.     The Academic Policies state that a student "may be required to repeat an academic year as a means for the student to demonstrate overall competence in the curriculum, to gain additional skills, or to improve their knowledge base in dentistry before moving on to the next level of the curriculum." Id., p. 8.

82.     At all times relevant hereto, Defendants never suggested, nor gave Plaintiff the choice, to repeat her third year at the College of Dentistry.

83.     The Academic Policies state that the "CPC reviews the student's overall academic

11

and non-academic performance in determining whether to allow a student to repeat the year or be dismissed." Id., p. 11.

84.     As a result of Plaintiff's complaints about Ms. Lyubarsky and Dr. Watson, Defendants retaliated against Plaintiff by dismissing her from the College of Dentistry, instead of giving her an opportunity to repeat her third year at the College of Dentistry.

85.     Defendants' actions have irreparably damaged Plaintiff's financial and professional development.

86.     The Individual Defendants' actions have irreparably damaged Plaintiff's financial and professional development.

87.     Plaintiff exhausted administrative remedies for her claims set forth herein and/or such administrative remedies were, and/or would have been, futile.

## FIRST CAUSE OF ACTION: AGAINST DEFENDANTS NYU AND COLLEGE OF DENTISTRY FOR BREACH OF CONTRACT

88.     Plaintiff repeats and realleges Paragraphs 1 through 87, above.

89.     NYU entered into both an implied contract and a written contract with Plaintiff upon offering her admission to permit her to complete her education so long as she fulfilled the academic requirements.

90.     The College of Dentistry entered into both an implied contract and a written contract with Plaintiff upon offering her admission to permit her to complete her education so long as she fulfilled the academic requirements.

91.     Plaintiff and NYU mutually intended and implicitly agreed to uphold their respective contractual obligations when NYU accepted Plaintiff's enrollment into the College of Dentistry.

12

92.     Plaintiff and the College of Dentistry mutually intended and implicitly agreed to uphold their respective contractual obligations when the College of Dentistry accepted Plaintiff's enrollment into the College of Dentistry.

93.     NYU's obligations toward Plaintiff arose from specific promises set forth in school bulletins, circulars, handbooks, and policies and procedures. These obligations were material to Plaintiff's contractual relationship with NYU.

94.     The College of Dentistry's obligations toward Plaintiff arose from specific promises set forth in school bulletins, circulars, handbooks, and policies and procedures, including, without limitation, the Academic Policies. These obligations were material to Plaintiff's contractual relationship with the College of Dentistry.

95.     Plaintiff adequately performed under the contract between her and Defendants because she satisfied Defendants' academic requirements and procedures.

96.     Defendants breached their contract with Plaintiff where they failed to follow and substantially observe their established rules and guidelines concerning Plaintiff's dismissal from the College of Dentistry, including without limitation, where they:

(a)     failed to evaluate Plaintiff's progress throughout the academic year and provide constructive feedback. See Exhibit A, p. 1.

(b)     failed to identify Plaintiff as an "at-risk student." Id.

(c)     failed to place Plaintiff on Monitored Status and apprise her of resources to assist her. Id.

(d)     failed to develop an action plan for Plaintiff to remediate her declining grades. Id.

(e)     failed to notify Plaintiff of any CPC decisions, including the need for intervention

13

and actions as a result of her academic performance. See Exhibit A, p. 8.

(f)     failed to place Plaintiff on a Clinical Mentorship plan. Id.

(g)     failed to place Plaintiff on academic probation. See Exhibit A, p. 1.

(h)     failed to suggest, or give Plaintiff the choice, to repeat her third year at the

College of Dentistry. Id., p. 11.

(i)     expelled Plaintiff at the end of her third year, in violation of their own Academic

Policies.

97.     Defendants' breach of their contract with Plaintiff caused Plaintiff damages.

98.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

suffered damages, including without limitation emotional distress, mental anguish and suffering,

personal humiliation, embarrassment, anxiety, medical costs, past and future economic loss, and

academic alienation.

### SECOND CAUSE OF ACTION: AGAINST DEFENDANTS NYU AND COLLEGE OF DENTISTRY FOR DISCRIMINATION IN VIOLATION OF THE ADA AND SECTION 504

99.     Plaintiff repeats and realleges Paragraphs 1 through 98, above.

100.    Under the ADA, "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §

12132. Under Section 504, "[n]o otherwise qualified individual with a disability…. shall, solely

by reason of her or his disability, be excluded from the participation in, be denied the benefits of,

or be subjected to discrimination under any program or activity receiving Federal financial

assistance." 29 U.S.C. § 794(a).

101.    Plaintiff is a "qualified individual with a disability" within the meaning of the ADA because ADHD is a mental impairment that substantially limits one or more of Plaintiff's major life activities.

102.    Defendants are covered by the ADA.

103.    Defendants are covered by the Section 504.

104.    Plaintiff was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, and was discriminated against by Defendants by reason of her disability.

105.    Plaintiff was qualified for her position at the College of Dentistry and could perform essential functions as required of her by the College of Dentistry with or without reasonable accommodations.

106.    Defendants knew that Plaintiff had a documented history of ADHD.

107.    Defendants failed to take reasonable care of Plaintiff's well-being, health, and safety even though staff and committee members knew or should have known that she was disabled and struggling due to the harassment that Defendants subjected her to.

108.    Plaintiff asked Defendants for reasonable accommodations for testing and examinations.

109.    Defendants were required to provide Plaintiff with reasonable accommodations for her disability so that she could have meaningfully accessed Defendants' programs and services but refused to make such accommodations.

110.    Defendants discriminated against Plaintiff when Defendants knew, or should have known, due to the drastic change in Plaintiff's GPA, that some kind of impairment was

preventing Plaintiff from excelling academically in Spring 2022, as she had prior to that time.

111.    Defendants subjected Plaintiff to disparate treatment on account of Plaintiff's disability. Other students in the College of Dentistry were similarly situated to Plaintiff. However, Plaintiff was treated less favorably than non-disabled students in the College of Dentistry.

112.    Defendants breached their fundamental educational principle, which states in pertinent part: "The educational goal of New York University College of Dentistry (the "College") is based on creating a partnership with students in order to assist them in achieving academic excellence."

113.    Defendants' violation of the ADA was motivated by discriminatory animus or ill will based on Plaintiff's disability and their deliberate indifference to Plaintiff's rights under the ADA.

114.    Defendants' violation of the Section 504 was motivated by discriminatory animus or ill will based on Plaintiff's disability and their deliberate indifference to Plaintiff's rights under the Section 504.

115.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including without limitation emotional distress, mental anguish and suffering, personal humiliation, embarrassment, anxiety, medical costs, economic loss, and academic alienation.

### THIRD CAUSE OF ACTION: AGAINST ALL DEFENDANTS FOR VIOLATION OF RIGHTS UNDER TITLE IX

116.    Plaintiff repeats and realleges Paragraphs 1 through 115, above.

117.    Title IX provides in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"

118.    NYU is a recipient of federal funds under Title IX.

119.    The College of Dentistry is a recipient of federal funds under Title IX.

120.    From about September 2019 through and including May 31, 2022, Plaintiff was a student at the College of Dentistry.

121.    Ms. Lyubarsky discriminated, harassed, and intimidated Plaintiff based on her gender, race, and disability by, without limitation, subjecting Plaintiff to language intended to humiliate, ridicule, and intimidate.

122.    Ms. Lyubarsky's hazing, discrimination, harassment, and intimidation of Plaintiff, coupled with co-Defendants' deliberate indifference, was sufficiently severe to create what a reasonable person would consider a hostile educational environment and institutional culture of abuse at the College of Dentistry.

123.    At all times relevant hereto, Defendants were aware of Plaintiff's protected status as a disabled, Asian female.

124.    Furthermore, Ms. Lyubarsky's hazing, discrimination, harassment, and intimidation, coupled with co-Defendants' deliberate indifference, had a concrete and negative effect on Plaintiff's ability to adequately perform academically.

125.    Plaintiff in fact found the educational environment created by Ms. Lyubarsky's hazing, discrimination, harassment, and intimidation to be hostile and abusive.

126.    Defendants had actual notice of hazing, discrimination, harassment, and intimidation of Plaintiff by Ms. Lyubarsky to Dr. Resnick, Dr. Watson, Ms. Ardon, and Dr. Smithey, among others, who had the authority to implement corrective measures on behalf of Defendants.

127.    Dr. Resnick acted with deliberate indifference to repeated hazing, discrimination, harassment, and intimidation of Plaintiff by Ms. Lyubarsky by, without limitation, ignoring Plaintiff's complaints and request to switch to a different fourth-year student and GPD.

128.    Dr. Watson acted with deliberate indifference to repeated hazing, discrimination, harassment, and intimidation of Plaintiff by Ms. Lyubarsky by, without limitation, ignoring Plaintiff's complaints and requests to switch to a different fourth-year student.

129.    Ms. Ardon acted with deliberate indifference to repeated hazing, discrimination, harassment, and intimidation of Plaintiff by Ms. Lyubarsky by, without limitation, ignoring Plaintiff's complaints and requests to switch to a different fourth-year student.

130.    Dr. Smithey acted with deliberate indifference to repeated hazing, discrimination, harassment, and intimidation of Plaintiff by Ms. Lyubarsky by, without limitation, ignoring Plaintiff's complaints and requests to switch to a different fourth-year student.

131.    Ms. Lyubarsky's hazing, discrimination, harassment, and intimidation of Plaintiff, coupled with co-Defendants' deliberate indifference, was so severe, pervasive, and offensive that it effectively barred Plaintiff's access to an educational opportunity or benefit.

132.    Defendants deprived Plaintiff of safe and secure environment by summarily expelling a tuition-paying female student, of Malaysian origin, with a disability, from the College of Dentistry, without: (a) evaluating Plaintiff's progress throughout the academic year

18

and providing constructive feedback; (b) identifying Plaintiff as an "at-risk student"; (c) placing Plaintiff on monitored status and developing an action plan to remediate her declining grades; (d) notifying Plaintiff of any CPC decisions, including the need for intervention/actions as a result of her academic performance; (d) placing Plaintiff on a Clinical Mentorship plan; (e) placing Plaintiff on academic probation; (f) suggesting, or giving Plaintiff the choice, to repeat her third year at the College of Dentistry.

133.    The Individual Defendants were appropriate persons with actual knowledge of the discrimination and harassment that occurred.

134.    Defendants acted with deliberate indifference to known acts of harassment when they made no changes to prevent or mitigate Ms. Lyubarsky's hazing of Plaintiff, took no action to discipline any individuals, and never attempted to identify the parties involved.

135.    Defendants' response was clearly unreasonable in light of the known circumstances.

136.    Defendants' discrimination was so severe, pervasive, and objectively offensive that it barred Plaintiff's access to educational opportunity and educational benefit.

137.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including without limitation emotional distress, mental anguish and suffering, personal humiliation, embarrassment, anxiety, medical costs, economic loss, and academic alienation.

### FOURTH CAUSE OF ACTION: AGAINST ALL DEFENDANTS FOR DISCRIMINATION IN VIOLATION OF THE NYSHRL

138.    Plaintiff repeats and realleges Paragraphs 1 through 137, above.

139.    New York Executive Law, Article 15, Human Rights Law, Section 296(4)

provides in pertinent part:

> It shall be an unlawful discriminatory practice for an educational institution to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, age, marital status, or status as a victim of domestic violence.

140.    NYU is an educational institution as defined by New York Executive Law § 292(39).

141.    The College of Dentistry is an educational institution as defined by New York Executive Law § 292(39).

142.    NYU discriminated against Plaintiff in violation of N.Y. Executive Law § 296(4) by denying her the use of its facilities and permitting her harassment on the basis of her race, color, national origin, gender, and disability; subjecting her to different treatment on the basis of her race, color, national origin, gender, and disability, including by subjecting her to disparate treatment and a hostile educational environment; by failing to prevent, respond to, adequately investigate, and appropriately resolve and remedy instances of unlawful discrimination; and by exhibiting deliberate indifference to the risk that she would be subjected to unlawful discrimination and a hostile educational environment.

143.    The College of Dentistry discriminated against Plaintiff in violation of N.Y. Executive Law § 296(4) on the basis of her race, color, national origin, gender, and disability, 1) subjecting her to disparate treatment and a hostile educational environment; 2) failing to prevent, respond to, adequately investigate, and appropriately resolve and remedy instances of unlawful discrimination; and 3) exhibiting deliberate indifference to the risk that she would be subjected to unlawful discrimination and a hostile educational environment.

144.    Dr. Resnick discriminated against Plaintiff in violation of N.Y. Executive Law §
296(4) by subjecting her to different treatment on the basis of her race, color, national origin,
gender, and disability, including by subjecting her to disparate treatment and a hostile
educational environment; by failing to prevent, respond to, adequately investigate, and
appropriately resolve and remedy instances of unlawful discrimination; and by exhibiting
deliberate indifference to the risk that she would be subjected to unlawful discrimination and a
hostile educational environment.

145.    Dr. Watson discriminated against Plaintiff in violation of N.Y. Executive Law §
296(4) by subjecting her to different treatment on the basis of her race, color, national origin,
gender, and disability, including by subjecting her to disparate treatment and a hostile
educational environment; by failing to prevent, respond to, adequately investigate, and
appropriately resolve and remedy instances of unlawful discrimination; and by exhibiting
deliberate indifference to the risk that she would be subjected to unlawful discrimination and a
hostile educational environment.

146.    Ms. Ardon discriminated against Plaintiff in violation of N.Y. Exec. Law § 296(4)
by subjecting her to different treatment on the basis of her race, color, national origin, gender,
and disability, including by subjecting her to disparate treatment and a hostile educational
environment; by failing to prevent, respond to, adequately investigate, and appropriately resolve
and remedy instances of unlawful discrimination; and by exhibiting deliberate indifference to the
risk that she would be subjected to unlawful discrimination and a hostile educational
environment.

147.    Dr. Smithey discriminated against Plaintiff in violation of N.Y. Exec. Law §
296(4) by subjecting her to different treatment on the basis of her race, color, national origin,
gender, and disability, including by subjecting her to disparate treatment and a hostile
educational environment; by failing to prevent, respond to, adequately investigate, and
appropriately resolve and remedy instances of unlawful discrimination; and by exhibiting
deliberate indifference to the risk that she would be subjected to unlawful discrimination and a
hostile educational environment.

148.    Ms. Lyubarsky discriminated against Plaintiff in violation of N.Y. Executive Law
§ 296(4) by subjecting her to different treatment on the basis of her race, color, national origin,
gender, and disability, including by subjecting her to disparate treatment and a hostile
educational environment; by failing to prevent, respond to, adequately investigate, and
appropriately resolve and remedy instances of unlawful discrimination; and by exhibiting
deliberate indifference to the risk that she would be subjected to unlawful discrimination and a
hostile educational environment.

149.    Each Defendant permitted discrimination and harassment against Plaintiff on the
basis of her race, color, national origin, gender, and disability.

150.    Each Defendant authorized, condoned, approved of, and acquiesced to permitted
discrimination, harassment, and intimidation against Plaintiff on the basis of her race, color,
national origin, gender, and disability.

151.    Each Defendant had actual knowledge of such discrimination, harassment, and
intimidation, and failed to undertake any action to prevent or stop it.

152.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including without limitation emotional distress, mental anguish and suffering, personal humiliation, embarrassment, anxiety, medical costs, economic loss, and academic alienation.

### FIFTH CAUSE OF ACTION: AGAINST NYU AND THE COLLEGE OF DENTISTRY FOR DISCRIMINATION IN VIOLATION OF THE NYCHRL

153.    Plaintiff repeats and realleges Paragraphs 1 through 152, above.

154.    At all times relevant to this claim, NYU was a place or provider of public accommodation within the meaning of New York City Administrative Code § 8-107(4)(a).

155.    By its actions as alleged herein, NYU denied to and withheld from Plaintiff the full and equal enjoyment of educational services because of her race, color, national origin, gender, and disability.

156.    At all times relevant to this claim, the College of Dentistry was a place or provider of public accommodation within the meaning of New York City Administrative Code § 8-107(4)(a).

157.    By its actions as alleged herein, the College of Dentistry denied to and withheld from Plaintiff the full and equal enjoyment of educational services because of her race, color, national origin, gender, and disability.

158.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including without limitation emotional distress, mental anguish and suffering, personal humiliation, embarrassment, anxiety, medical costs, economic loss, and academic alienation.

**SIXTH CAUSE OF ACTION: AGAINST ALL DEFENDANTS FOR
RETALIATION IN VIOLATION OF THE ADA, SECTION 504, TITLE IX, NYSHRL,
<ins>AND NYCHRL</ins>**

159.     Plaintiff repeats and realleges Paragraphs 1 through 158, above.

160.     Plaintiff, being diagnosed with a disability, was a member of a protected class and

beneficiary of this non-discrimination mandate.

161.     Plaintiff, as a woman, was a member of a protected class and beneficiary of this

non-discrimination mandate.

162.     Plaintiff, as Malaysian, was a member of a protected class and beneficiary of this

non-discrimination mandate.

163.     Plaintiff engaged in a protected activity when she complained to Defendants

about Ms. Lyubarsky's hazing, harassment, intimidation, and discrimination.

164.     Plaintiff engaged in a protective activity by complaining to Dr. Resnick about Ms.

Lyubarsky's hazing, harassment, intimidation, and discrimination.

165.     Plaintiff engaged in a protective activity by complaining to Dr. Watson about Ms.

Lyubarsky's hazing, harassment, intimidation, and discrimination.

166.     Plaintiff engaged in a protective activity by complaining to Ms. Lyubarsky about

Ms. Lyubarsky's hazing, harassment, intimidation, discrimination, and unprofessional conduct.

167.     Plaintiff engaged in protected activity by complaining to Dr. Resnick about Ms.

Lyubarsky's Alleged Malpractice.

168.     Defendants knew of Plaintiff's involvement in the protected activity, including,

without limitation, Plaintiff's actions to report, oppose, and protest unlawful discrimination,

including her complaints to Defendants and pursuit of remediation.

169.    Dr. Resnick knew of Plaintiff's involvement in the protected activity, including, without limitation, Plaintiff's actions to report, oppose, and protest unlawful discrimination, and Ms. Lyubarsky's Alleged Malpractice, including her complaints to Defendants and pursuit of remediation.

170.    Dr. Watson knew of Plaintiff's involvement in the protected activity, including, without limitation, Plaintiff's actions to report, oppose, and protest unlawful discrimination, and Ms. Lyubarsky's Alleged Malpractice, including her complaints to Defendants and pursuit of remediation.

171.    Ms. Lyubarsky knew of Plaintiff's involvement in the protected activity, including, without limitation, Plaintiff's actions to report, oppose, and protest unlawful discrimination, and Ms. Lyubarsky's Alleged Malpractice, including her complaints to Defendants and pursuit of remediation.

172.    Ms. Ardon knew of Plaintiff's involvement in the protected activity, including without limitation, Plaintiff's actions to report, oppose, and protest unlawful discrimination, including her complaints to Defendants and pursuit of remediation.

173.    Dr. Smithey knew of Plaintiff's involvement in the protected activity, including without limitation, Plaintiff's actions to report, oppose, and protest unlawful discrimination, including her complaints to Defendants and pursuit of remediation.

174.    Defendants took adverse, school-related action against Plaintiff, and expelled Plaintiff from the College of Dentistry based on her involvement in protected activity.

175.    Defendants failed to follow its published Academic Policies, as set forth above, demonstrating that Defendants' actions were retaliation as opposed to standard enforcement of

policy.

176.    A causal connection exists between Plaintiff's protected activity and Defendants'
adverse action.

177.    The adverse action taken by Defendants occurred in close temporal proximity to
the occurrence of Plaintiff's protected activity.

178.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff
suffered damages, including without limitation emotional distress, mental anguish and suffering,
personal humiliation, embarrassment, anxiety, medical costs, economic loss, and academic
alienation.

**WHEREFORE**, Plaintiff prays that judgment be entered:

I.      On the First Cause of Action, awarding Plaintiff, CARMEN CHAI damages in an
amount to be determined at trial, including without limitation, compensatory damages, punitive
damages, and her reasonable costs, attorneys' fees, and experts' fees;

II.     On the Second Cause of Action, awarding Plaintiff, CARMEN CHAI damages in
an amount to be determined at trial, including without limitation, compensatory damages,
punitive damages, and her reasonable costs, attorneys' fees, and experts' fees;

III.    On the Third Cause of Action, awarding Plaintiff, CARMEN CHAI damages in
an amount to be determined at trial, including without limitation, compensatory damages,
punitive damages, and her reasonable costs, attorneys' fees, and experts' fees;

IV.     On the Fourth Cause of Action, awarding Plaintiff, CARMEN CHAI damages in
an amount to be determined at trial, including without limitation, compensatory damages,
punitive damages, and her reasonable costs, attorneys' fees, and experts' fees; and

V.      On the Fifth Cause of Action, awarding Plaintiff, CARMEN CHAI damages in an amount to be determined at trial, including without limitation, compensatory damages, punitive damages, and her reasonable costs, attorneys' fees, and experts' fees.

VI.     On the Sixth Cause of Action, awarding Plaintiff, CARMEN CHAI damages in an amount to be determined at trial, including without limitation, compensatory damages, punitive damages, and her reasonable costs, attorneys' fees, and experts' fees.

VII.    On the above stated causes of action, awarding Plaintiff prejudgment interest, costs, and such other further relief as this Court deems appropriate.

Dated:  Chappaqua, New York
        October 19, 2023

                                LAW OFFICE OF TODD J. KROUNER, P.C.


                        By: _____
                                Todd J. Krouner, Esq.
                                Christopher W. Dennis, Esq.
                                Attorneys for Plaintiff
                                93 North Greeley Avenue
                                Chappaqua, New York 10514
                                (914) 238-5800