```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____        │
│ DATE FILED: 9/4/2024                 │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARMEN CHAI,

> Plaintiff,

-against-

NEW YORK UNIVERSITY, NYU COLLEGE
OF DENTISTRY, STEVEN RESNICK, DDS,
COLLEEN WATSON, DDS, NINETTE
LYUBARSKY, DDS, MAYA ARDON,
LESLIE SMITHEY, DDS, and DOES 1-10,

> Defendants.

---

1:23-cv-09192-MKV

**OPINION AND ORDER
GRANTING DEFENDANTS'
MOTIONS TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Former student Carmen Chai ("Plaintiff") brings this diversity action against New York University ("NYU"), NYU College of Dentistry ("College of Dentistry") (together, the "NYU Defendants"), and former College of Dentistry student Ninette Lyubarsky (and collectively, the "Defendants"), alleging various state law claims, including breach of contract, breach of implied contract, negligent misrepresentation, unjust enrichment, fraud, breach of the implied covenant of good faith and fair dealing, and negligent infliction of emotional distress. The Defendants now move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons below, the motion by the NYU Defendants to dismiss is GRANTED, and the motion by Defendant Lyubarsky to dismiss is GRANTED.

---

[1] The NYU Defendants and Individual Defendant Lyubarsky, represented by separate counsel, have moved separately for dismissal. [ECF Nos. 50–54]. However, Lyubarsky "adopts the arguments set forth in the motion to dismiss filed by" the NYU Defendants "to the extent applicable." [ECF No. 54] ("Lyubarsky Mem.") at 1.

## BACKGROUND[2]

Plaintiff is a 27-year-old woman who previously aspired to become a dentist.  AC ¶ 1.  In the Fall of 2019, after receiving her bachelor's degree in biomolecular science from Defendant NYU, Plaintiff accepted an offer of admission to NYU's College of Dentistry.  AC ¶¶ 17–19.  For years prior to her acceptance to the College of Dentistry, Plaintiff had been clinically diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD").  AC ¶¶ 2, 17.  On December 29, 2020, while enrolled as a student at the College of Dentistry, Plaintiff submitted her application for extended time during testing and examination based on her ADHD diagnosis.  AC ¶ 21.  Within a week, the NYU Defendants informed Plaintiff that her application was approved, and that she would receive time and a half for her testing and examinations.  AC ¶ 22.  Plaintiff alleges that, accordingly, certain faculty members of the NYU Defendants "knew or should have known about Plaintiff's ADHD."  AC ¶ 27.

From 2019 through 2021, Plaintiff's grades were satisfactory.  AC ¶ 23.  Plaintiff's grade point average ("GPA") was 3.213 in Fall of 2019, 3.214 in Spring of 2020, 3.805 in Fall of 2020, and 3.852 in Spring of 2021.  AC ¶ 23.  During the Fall of 2021, Plaintiff's grades began to decline, with her GPA for the Fall 2021 semester falling to 3.116.  AC ¶ 24.  Before the start of the Fall 2021 semester, the NYU Defendants assigned Individual Defendant, Ms. Lyubarsky, who was then a fourth-year student at the College of Dentistry, to oversee the clinical aspects of Plaintiff's education at the College of Dentistry.  AC ¶ 25.  Plaintiff alleges that shortly after this assignment, Ms. Lyubarsky subjected Plaintiff to "hazing, harassment, and intimidation on a pervasive basis."  AC ¶ 26.  Ms. Lyubarsky's allegedly abusive conduct toward Plaintiff lasted from in or about Fall 2021, through in or about Spring 2022.  AC ¶ 26.

---

[2] The facts are taken from the Amended Complaint ("AC" or the "Complaint") [ECF No. 46], and for purposes of this motion, are accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On one instance, in November 2021, Ms. Lyubarsky allegedly publicly screamed at Plaintiff in front of patients and fellow students.  AC ¶ 29.  Plaintiff alleges that on multiple occasions in Fall 2021, Ms. Lyubarsky was "verbally abusive and hostile when talking to Plaintiff about patient charting."  AC ¶ 30.  Due to Plaintiff's ADHD, she preferred to chart immediately after each appointment.  AC ¶ 30.  However, Ms. Lyubarsky would not allow Plaintiff to do so.  AC ¶ 30.  Rather, Ms. Lyubarsky required Plaintiff to see the next patient and complete the patient charts at the end of each clinic day.  AC ¶ 30.  In addition, Plaintiff alleges that Ms. Lyubarsky frequently used Plaintiff's ID card to check out expensive dental supplies and equipment.  AC ¶ 31.  Subsequently, Plaintiff refused to provide Ms. Lyubarsky with her ID card to avoid financial exposure for expensive equipment that Plaintiff had not in fact taken from the clinic's dispensary.  AC ¶ 31.  Ms. Lyubarsky allegedly reacted by becoming "further verbally abusive and hostile toward Plaintiff."  AC ¶ 31.

Plaintiff alleges that Ms. Lyubarsky was in the habit of leaving Plaintiff alone with patients, without supervision, while Ms. Lyubarsky was drinking coffee with her fellow fourth year classmates.  AC ¶ 32.  After Plaintiff finished treating patients, "Ms. Lyubarsky would come back and take credit for Plaintiff's work."  AC ¶ 32.  On one occasion in Fall of 2021, Plaintiff asked Ms. Lyubarsky to "stop bullying her."  AC ¶ 33.  Ms. Lyubarsky apparently refused, stating that institutional hazing was prevalent at the College of Dentistry.  AC ¶ 33.  Specifically, Plaintiff alleges that Ms. Lyubarsky stated, in words or substance: "If I was treated like this by my classmates when I was a third-year student, why can't I treat you the same way?"  AC ¶ 33.

The tension between Plaintiff and Ms. Lyubarsky escalated after Ms. Lyubarsky allegedly negligently treated an elderly patient in the clinic and dismissed him with an untreated cavity in his tooth.  AC ¶ 35.  Believing that Ms. Lyubarsky's conduct was highly unprofessional and "tantamount to malpractice," Plaintiff reported Ms. Lyubarsky the same day to her Senior Group

Practice Director, Dr. Steven Resnick.  AC ¶¶ 35, 36.  Soon after Plaintiff reported Ms. Lyubarsky to Dr. Resnick, Plaintiff was summoned by Plaintiff's Group Practice Director, Dr. Colleen Watson, who "scolded" Plaintiff for having reported her concerns.  AC ¶ 36.  Dr. Watson allegedly complained that as a result of Plaintiff's grievance, Dr. Watson now had a "target on [her] back."  AC ¶ 36.  In addition, Dr. Watson allegedly repeatedly told Plaintiff that "what happens in the clinic, stays in the clinic."  AC ¶ 36.

Plaintiff alleges that from approximately November 2021 through April 2022, she repeatedly asked the NYU Defendants to reassign her to a different fourth-year student and a different Group Practice Director to no avail.  AC ¶¶ 42–45.  Ultimately, Plaintiff alleges that Ms. Lyubarsky's "hazing, harassment, and intimidation" caused Plaintiff "difficulty sleeping, isolation, depression, panic-attacks, and loss of appetite, and significantly impacted Plaintiff's academic performance."  AC ¶ 39.  In the Spring of 2022, purportedly as a result of Lyubarsky's "hazing, harassment, and intimidation," Plaintiff's GPA for the Spring 2022 semester dropped precipitously to 1.714.  AC ¶ 41.

In the Spring 2022 semester, during a video conference, and allegedly "without any warning," Assistant Dean for Academic Affairs, Dr. Leslie Smithey, requested that Plaintiff take a leave of absence.  AC ¶ 46.  Plaintiff declined.  AC ¶ 47.  Less than two months later, after the conclusion of the Spring 2022 semester—and after Plaintiff had received a significantly lower GPA—the NYU Defendants, through administrative representatives, asked Plaintiff to participate in a Zoom conference.  AC ¶ 48.  During the conference, one of the participants verbally informed Plaintiff that she had been expelled from the College of Dentistry.  AC ¶ 48.

In a termination letter, dated May 31, 2022 and signed by Dr. Smithey (the "Termination Letter"), the NYU Defendants stated that the reason for expulsion was that Plaintiff failed two courses with a grade of F and two courses with a grade of D.  AC ¶ 49.  Plaintiff asserts that the

Termination Letter did not reflect the fact that, prior to the letter, Plaintiff had re-taken and passed the competency examination for one of the classes in which she had received an F and had already commenced the process to remediate her grade for one of the classes in which she had received a D.  AC ¶¶ 50–51.  Shortly thereafter, Plaintiff submitted her appeal of her expulsion.  AC ¶ 52.  Two weeks later, the NYU Defendants denied Plaintiff's appeal.  AC ¶ 53.

Plaintiff further alleges that when the NYU Defendants expelled her from the College of Dentistry, they violated several of their "Academic Standards and Policies for the Predoctoral Program in Dentistry," or "Guidelines for Academic Progress, Promotion, and Graduation" (the "Academic Policies").  AC ¶¶ 54–71; *see also* AC, Exhibit A (the "Academic Policies").  Plaintiff alleges that the NYU Defendants violated the following Academic Policies:

- "The faculty of the College evaluate student progress throughout the academic year and provide constructive feedback."  *See* Academic Policies at 1; AC ¶ 54.  Plaintiff alleges that "[f]rom September 2021 until [her] expulsion in May 2022, [she] was not provided with any constructive feedback concerning her academic performance.  AC ¶ 55.

- "Class Promotions Committees (CPC) meet a minimum of four times a year to monitor student performance and identify at-risk students."  *See* Academic Policies at 1; AC ¶ 56.  Plaintiff alleges that she "was never identified as an 'at-risk student' by the NYU Defendants," and thus her "academic performance was never monitored by the CPC."  AC ¶ 57.

- "When students are identified as at risk of failing one or more courses, they are placed on Monitored Status and are apprised of resources to assist them."  *See* Academic Policies at 1; AC ¶ 58.  Plaintiff alleges that she "was never placed on Monitored Status, nor apprised of any resources to assist her."  AC ¶ 59.

- "Students not making satisfactory progress are placed on 'monitored status' and an action plan is developed."  *See* Academic Policies at 1; AC ¶ 60.  Plaintiff alleges that at all times relevant here, "the NYU Defendants developed no action plan for [her] to remediate her declining grades."  AC ¶ 61.

- "The Office of Academic Affairs will notify students of any CPC decisions including the need for intervention/actions as a result of the student's academic performance."  *See* Academic Policies at 2; AC ¶ 62.  Plaintiff alleges that she

"received no notification of any CPC decisions, including the need for intervention/actions as a result of her academic performance." AC ¶ 63.

- "Students who are determined to be deficient in patient care skills may be placed on a Clinical Mentorship plan as a means to improve in a closely-supervised clinical setting." *See* Academic Policies at 8; AC ¶ 64. Plaintiff alleges that "the NYU Defendants failed to place [her] on a Clinical Mentorship plan." AC ¶ 65.

- "Monitored Status is an internal designation, which is changed to either good academic standing or academic probation at the end of the academic year." *See* Academic Policies at 1; AC ¶ 66. Plaintiff alleges she was never placed on academic probation. AC ¶ 67.

- "A student may be required to repeat an academic year as a means for the student to demonstrate overall competence in the curriculum, to gain additional skills, or to improve their knowledge base in dentistry before moving on to the next level of the curriculum . . . The CPC reviews the student's overall academic and non-academic performance in determining whether to allow a student to repeat the year or be dismissed." *See* Academic Policies at 11, 15; AC ¶¶ 68, 69. Plaintiff alleges that the "NYU Defendants failed to consider Plaintiff's overall academic and non-academic performance when they decided to expel Plaintiff instead of having required her to repeat the year." AC ¶ 70.

Plaintiff asserts that, as a result of the foregoing, the NYU Defendants have breached contractual obligations owed to Plaintiff. AC ¶ 71.

## PROCEDURAL HISTORY

Plaintiff originally commenced this suit in October 2023 against the NYU Defendants, Lyubarsky, and three additional Individual Defendants associated with the NYU Defendants, asserting six claims, including breach of contract as well as claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, Title IX, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). In response to the pre-motion letters from the NYU Defendants and Individual NYU Defendants regarding their anticipated motions to dismiss the original Complaint, Plaintiff withdrew her discrimination claims and retaliation claims under the aforementioned statutes and withdrew her claims against all Individual NYU Defendants except Lyubarsky.

With leave of the Court, Plaintiff filed an Amended Complaint.  [ECF No. 46] ("AC" or the "Complaint").  In the Amended Complaint, Plaintiff now asserts six different state law causes of action against the NYU Defendants for (1) breach of contract, (2) breach of implied contract, (3) negligent misrepresentation, (4) unjust enrichment, (5) fraud, (6) breach of the implied covenant of good faith and fair dealing, (7) retaliation in violation of New York Labor Law ("NYLL") § 740(2), and (8) retaliation in violation of NYLL § 741(2)(a).  AC ¶¶ 50–107.  Plaintiff asserts one cause of action against the sole remaining Individual Defendant Lyubarsky for negligent infliction of emotional distress.  AC ¶¶ 137–142.

The Defendants now move to dismiss all claims against them under Rule 12(b)(6).  *See* NYU Defendants' Motion to Dismiss [ECF No. 50]; NYU Defendants' Memorandum of Law [ECF No. 52] ("NYU Def. Mem."); Affidavit of Leslie F. Smithey [ECF No. 51] ("Smithey Decl."); Lyubarsky Motion to Dismiss [ECF No. 53]; Lyubarsky Memorandum of Law [ECF No. 52] ("Lyubarsky Mem.").  Plaintiff opposes each motion in separate opposition briefs.  *See* Memorandum of Law in Opposition to NYU Defendants' Motion to Dismiss [ECF No. 57] ("Pl. NYU Opp."); Memorandum of Law in Opposition to Lyubarsky Motion to Dismiss [ECF No. 58] ("Pl. Lyubarsky Opp.").  The NYU Defendants and Lyubarsky each filed Replies.  *See* NYU Defendants' Reply Memorandum of Law [ECF No. 59] ("NYU Reply"); Lyubarsky Reply Memorandum of Law [ECF No. 60] ("Lyubarsky Reply").

## LEGAL STANDARD

### *Failure to State a Claim Under Rule 12(b)(6)*

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678.  While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

***Heightened Pleading Standard Under Rule 9(b)***

Beyond the requirements of Rule 12(b)(6), a complaint alleging fraud, which Plaintiff does here, must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) with respect to the particular fraud claim.  *See, e.g.*, *ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–20 (2007)).  Rule 9(b) demands that "the pleading specify (1) the fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent."  *United States ex rel. Chorches for Bankr. Est. of Fabula v. American Medical Response, Inc.*, 865 F.3d 71, 88 (2d Cir. 2017).  Put another way, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."  *See U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

## DISCUSSION

### I.    Documents Properly Considered on a Motion to Dismiss.

As a threshold matter, there is dispute amongst the parties as to which documents may be properly considered at this stage.  In considering a motion to dismiss pursuant to Rule 12(b)(6), it is well established that a pleading is deemed to include any "written instrument" that is attached to it as "an exhibit," Fed. R. Civ. P. 10(c), or is incorporated in it by reference, *see, e.g.*, *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020).  "And even if the 'plaintiff chooses not to attach' an instrument 'to the complaint or [to] incorporate [it] by reference,' if it is one 'upon which' the plaintiff 'solely relies and which is integral to the complaint,' the court may take the

document into consideration in deciding the defendant's motion to dismiss." *Lynch*, 952 F.3d at 79 (quoting *International Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995)).  As previously noted, Plaintiff attached to her Complaint the NYU Defendants' "Academic Standards and Policies for the Predoctoral Program in Dentistry," or "Guidelines for Academic Progress, Promotion, and Graduation" (the "Academic Policies").  *See* AC, Exhibit A (the "Academic Policies").  Thus, the Court may properly consider this "written instrument" while ruling on this motion.  Fed. R. Civ. P. 10(c); *Lynch*, 952 F.3d at 79.

However, the NYU Defendants have submitted with their motion to dismiss an Affidavit of Associate Dean for Academic Affairs at the College of Dentistry, Leslie F. Smithey ("Smithey Decl."), attaching (1) a "Testing Accommodations Agreement," which they argue states the student's responsibilities and duration of an accommodation, and (2) a formal "Action Plan," allegedly provided to Plaintiff and bearing her signature.  *See* Smithey Decl., Exhibit A ("Testing Accommodations Agreement"); Smithey Decl., Exhibit B ("Action Plan").  Relying on *United States ex rel. Foreman v. AECOM*, the NYU Defendants argue that the Court may properly consider the Testing Accommodations Agreement and Action Plan on their motion to dismiss because Plaintiff "heavily relies" on the documents with respect to certain causes of action, and thus, they are "integral to the Amended Complaint."[3]  NYU Def. Mem. at 11, 15 (citing 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, 142 S.Ct. 2679 (2022)).

However, *Foreman* also cautions that "even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and it must be clear that "there exist no material disputed issues of fact regarding the

---

[3] Specifically, the NYU Defendants argue Plaintiff "heavily relies" on the absence of an Action Plan in support of her contract claims, and an alleged failure to be apprised of her accommodations in support of her negligent misrepresentation and fraud claims.  NYU Def. Mem. at 11, 15.

relevance of the document."  19 F.4th at 106 (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d

104, 111 (2d Cir. 2010)); *see also Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021)

(noting that a party "to a written contract" may not "make assertions about the terms of the contract

and preclude a court from considering on a motion to dismiss the *undisputed* document that

embodies those terms") (emphasis added).  This is not the case here.  With respect to the Action

Plan, Plaintiff "denies that the Action Plan is genuine because the purported acknowledgement

signature on the Action Plan is not in fact hers" and "denies that she was provided with the

purported Action Plan prior to the NYU Defendants' Motion."  *See* Pl. NYU Opp. at 4–5; Affidavit

of Plaintiff Carmen Chai ("Chai Aff.") ¶ 3.  With respect to the Testing Accommodations

Agreement, Plaintiff similarly "rejects" "the authenticity" of the document.  Pl. NYU Opp. at 4.

Additionally, Plaintiff argues that she did not rely on the Testing Accommodations Agreement in

drafting her Complaint, and thus, the document is not "integral to the Complaint."  Pl. NYU Opp.

at 15 (citing *Foreman*, 19 F.4th at 106 (before a document is considered "integral to the complaint,

the plaintiff must rely on the terms and effect of a document in drafting the complaint")).

Because there *is* dispute "regarding the authenticity [and] accuracy of the document[s]"

that the NYU Defendants urge the Court to consider, the Court does not consider either the Testing

Accommodations Agreement or the Action Plan proffered by the NYU Defendants in support of

their motion.  *Foreman*, 19 F.4th at 106 (quoting *DiFolco*, 622 F.3d at 111).

## II.    Certain of Plaintiff's Claims Should Have Been Brought in an Article 78 Proceeding.

As a second threshold matter, the NYU Defendants argue that all of Plaintiff's claims

concerning her dismissal from the dental program relate to academic or administrative decisions,

and, thus, should have been brought in an Article 78 proceeding.[4]   NYU Def. Mem. at 7. They argue that, therefore, these claims in this case must be dismissed for failure to state a claim.  NYU Def. Mem. at 9.

Under New York law, generally academic institutions are "better suited to make relatively final decisions concerning wholly internal matters," and a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") is the "appropriate vehicle" for "dealing with and reviewing controversies involving colleges and universities." *Maas v. Cornell*, 94 N.Y.2d 87, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999).  As such, "when litigants fail to avail themselves of [Article 78], courts may justifiably dismiss plenary claims premised upon alleged failures to follow applicable principles set forth in [university] handbooks." *Id*.  At the same time, however, Article 78 is not the exclusive remedy for *all* relief sought against a college.  A cause of action based on a contract may be brought in an action at law rather than in an Article 78 proceeding.  *See e.g.*, *Golomb v. Board of Ed. of City Sch. Dist. of City of New York*, 92 A.D.2d 256, 460 N.Y.S.2d 805 (2d Dep't 1983); *Paladino v. Adelphi University*, 89 A.D.2d 85, 92, 454 N.Y.S.2d 868 (2d Dep't. 1982).  The question thus becomes whether Plaintiff here has truly stated a contract claim, or whether she is seeking the type of judicial review of Defendants' actions which should have been pursued in an Article 78 proceeding.

There is an extensive line of Second Circuit cases in which courts have dismissed claims where, although styled as breach of contract claims, a litigant brings claims based on an alleged failure of a university to follow internal policies and procedures.  *See e.g.*, *Ramlal-Nankoe v. Ithaca Coll.*, 591 F. App'x 23, 24 (2d Cir. 2015) ("[A] university faculty member's 'claims based upon

[4] Specifically, the NYU Defendants contend that Plaintiff's breach of contract claim (Claim One), breach of implied contract claim (Claim Two), breach of implied covenant of good faith and fair dealing claim (Claim Six), retaliation against a whistleblower claim, in violation of Labor Law § 740 (Claim Eight), and retaliation against a healthcare whistleblower claim, in violation of Labor Law § 741 (Claim Nine) should have been brought in an Article 78 proceeding.  NYU Def. Mem. at 9.

the rights or procedures found in college manuals, bylaws and handbooks may *only* be reviewed by way of a special proceeding under Article 78 of New York's CPLR in New York State Supreme Court.' ") (quoting *Bickerstaff v. Vassar Coll.*, 354 F. Supp. 2d 276, 283 (S.D.N.Y. 2004), *aff'd*, 160 F. App'x 61 (2d Cir. 2005) (emphasis added); *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (affirming district court's dismissal of breach of contract claim, which plaintiff based on the medical school's alleged failure to follow internal policies and procedures when it terminated plaintiff); *Byerly v. Ithaca College*, 290 F. Supp. 2d 301, 305 (N.D.N.Y. 2003), *aff'd*, 113 F. App'x 418, 420–21 (2d Cir. 2004) (same).

For example, in *Bickerstaff v. Vassar College*, 354 F. Supp. 2d 276, 283 (S.D.N.Y. 2004), *aff'd*, 160 F. App'x. 61, 63 (2d Cir. 2005), plaintiff alleged that the college violated its governing rules when the president and dean "refused to mediate the [p]laintiff's intra-collegiate harassment complaint and dismissed [her] grievance without further investigation." *Id.* The court granted the university's summary judgment motion, finding that because plaintiff based her claim on the college's failure to adhere to its own procedures, she should have pursued an Article 78 proceeding. *Id.* at 283 (citing *Byerly*, 290 F. Supp. 2d at 304–05). Similarly, here Plaintiff's breach of contract claim (Claim One), breach of implied contract claim (Claim Two), and breach of implied covenant of good faith and fair dealing claim (Claim Six) are all expressly based on the NYU Defendants' alleged violations of several of their *internal* Academic Policies. *See* AC ¶¶ 54–71. Plaintiff alleges no breached "contractual" obligation outside of the NYU Defendants' own, self-promulgated policies and procedures.

Accordingly, the relief requested for Claims One, Two, and Six, if available at all, could be sought only in an Article 78 proceeding, because the administrative decisions that Plaintiff bases these contract-related claims on are precisely the kind of professional judgment envisioned in the courts' consistent deference to the decisions of university administrators. *Compare* AC ¶ 54

("From September 2021 until Plaintiff's expulsion in May 2022, [she] was not provided with any constructive feedback concerning her academic performance."); AC ¶ 59 (Plaintiff alleges that she "was never placed on Monitored Status, nor apprised of any resources to assist her."); AC ¶ 61 ("[T]he NYU Defendants developed no action plan for [her] to remediate her declining grades."); AC ¶ 65 ("[T]he NYU Defendants failed to place Plaintiff on a Clinical Mentorship plan.") *with Ramlal-Nankoe*, 591 F. App'x at 24; *Bickerstaff*, 354 F. Supp. 2d at 283; *see also Kickertz v. New York Univ.*, 110 A.D.3d 268, 275, 971 N.Y.S.2d 271 (1st Dep't 2013) (dismissing contract claim based on Defendant NYU's alleged failure to provide a dental student with progress reports and "monthly target levels" to help her "stay on track," because "while couched in terms of a violation of a contractual right, [they] challenge the adequacy of NYU's teaching methods and the failure to award a degree, and do not state a cognizable contract action.").

Furthermore, although the NYU Defendants do not expressly argue that Plaintiff's unjust enrichment claim (Claim Four) similarly should have been brought in an Article 78 proceeding, the NYU Defendants do argue that the unjust enrichment claim is entirely duplicative of Plaintiff's breach of contract and breach of implied contract claims, which claim that the NYU Defendants failed to comply with the Academic Policies. NYU Def. Mem. at 16. The Court agrees that Plaintiff's unjust enrichment claim is premised on the same factual allegations as her contract-related claims, and therefore "to the extent it is based on the allegation that plaintiff conferred a benefit upon NYU by paying tuition and fees to NYU in purported exchange for a [] degree under the terms and conditions advertised to her, it challenges NYU's determination to expel her, and

belonged in [an] article 78 proceeding." *Kickertz*, 110 A.D.3d 268, 276.  Accordingly, Claims One, Two, Four, and Six are dismissed.[5]

Next, the NYU Defendants argue that Plaintiff's NYLL retaliation claims (Claims Eight and Nine) are similarly tied to the decision to expel Plaintiff or to other academic decisions, and, thus, also should have been brought in an Article 78 proceeding.  NYU Def. Mem. at 8.  Indeed, in connection with its two retaliation claims, Plaintiff's Complaint explicitly states that "the NYU Defendants retaliated against Plaintiff *by expelling her* from the College of Dentistry in derogation of their own Academic Policies."  Compl. ¶¶ 151, 165.  However, Plaintiff counters that her NYLL retaliation "claims are not so limited," because she alleges that Defendants also retaliated against her by "threatening and/or directing [her] to be threatened," as well as "harass[ment]" and "abusive hazing perpetuated by professors and student mentors."  Pl. NYU Opp. at 9; AC ¶¶ 78, 98, 109, 131, 150, 164.  The Court agrees with Plaintiff that her NYLL retaliation claims are distinguishable from her contract-based claims with respect to determining whether such claims should have been brought pursuant to an Article 78 proceeding.

As an initial matter, neither party offers the Court any case law concerning whether relief for NYLL retaliation claims that contain allegations which do not involve wholly academic-related decisions (*i.e.*, expulsion, discipline, grading) must be sought only in an Article 78 proceeding. Moreover, the Court has independently found no authoritative law to guide its analysis.  The NYU Defendants, for instance, merely counter that these actions do not, as a matter of law. constitute retaliation under NYLL Sections 740 or 741 because "they do not rise to the level of an adverse personnel action."  NYU Reply at 2.

---

[5] It is unnecessary to address the NYU Defendants' argument that these claims are time barred under Article 78's statute of limitations because Article 78 is a type of proceeding that is available in state court, and not in federal court. *Finley v. Giacobbe*, 79 F.3d 1285, 1292 (2d Cir. 1996).

Notwithstanding the minimal legal guidance, Plaintiff's NYLL retaliation claims are clearly distinguishable from her contract-related claims (which should have been brought in an Article 78 proceeding). Specifically, Plaintiff's retaliation claim pursuant to NYLL § 740(2) (Claim Eight) alleges that she was retaliated against, harassed, and ultimately expelled because she disclosed to a supervisor an "activity" she "reasonably believe[d] pose[d] a substantial and specific danger to the public health or safety." AC ¶¶ 35–36, 144. Moreover, Plaintiff's retaliation claim pursuant to NYLL § 741(2)(a) (Claim Nine) alleges that she was retaliated against, harassed, and ultimately expelled because she disclosed to a supervisor patient care that she "reasonably believe[d] constitute[d] improper quality of patient care or improper quality of workplace safety." AC ¶¶ 35–36, 154, 155. Drawing all inferences in favor of Plaintiff at this stage, the Court cannot hold—as a matter of law—that Plaintiff's retaliation claims are the kind of professional judgment or administrative decisions warranting deference by the Court to the decisions of university administrators. *Cf. Ramlal-Nankoe*, 591 F. App'x at 24; *Bickerstaff*, 354 F. Supp. 2d at 283; *Kickertz*, 110 A.D.3d at 275. Unlike Plaintiff's contract-related claims, which are based exclusively on the NYU Defendants' failure to follow internal policies and procedures, namely the Academic Policies, her retaliation claims are not the sort of claims "based upon the rights or procedures found in college manuals, bylaws and handbooks." *Ramlal-Nankoe*, 591 F. App'x at 24. As a result, Article 78 is not the exclusive remedy for Plaintiff's NYLL retaliation claims.

**III.    Plaintiff's NYLL Retaliation Claims Fail on the Merits.**

The Court turns to Plaintiff's NYLL retaliation claims on the merits. The NYU Defendants first argue that these claims must fail because Plaintiff is not an employee under the NYLL and therefore cannot recover under this statute. NYU Def. Mem. at 20–22. Section 740 defines an employee as "an individual who performs services for and under the control and direction of an employer *for wages or other remuneration*." N.Y. Lab. Law § 740(1)(a) (emphasis added).

Similarly, Section 741 defines an employee as "any person who performs health care services for and under the control and direction of any public or private employer which provides health care services *for wages or other remuneration*." N.Y. Lab. Law § 741(1)(a) (emphasis added). In light of these definitions, the NYU Defendants argue that Plaintiff cannot be an employee under the NYLL because her clinical work was unpaid and undertaken solely to further her own education and practical training. NYU Def. Mem. at 20–22.

The concept of "employment" is "a flexible [one] to be determined on a case-by-case basis by review of the totality of the circumstances" while emphasizing the "economic reality" of the parties' relationships. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008). The Second Circuit has held that when determining whether a student in a vocational setting is an employee under the NYLL,[6] courts apply the primary beneficiary test. *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 785 (2d Cir. 2019) (applying primary beneficiary test to distinguish between "employees" and "*bona fide* students" of "vocational schools or vocation-related programs (such as a training salon) where trainees acquire necessary skills by practicing their craft in a real-world setting"); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.2d 528, 536–537 (2d Cir. 2016) (applying the primary beneficiary test when considering the employment status of unpaid interns who "were enrolled in or had recently completed a formal course of post-secondary education" and who were "working temporarily in a commercial concern").

Like interns and vocational students, as a dental student, Plaintiff entered her clinical work with "the expectation of receiving educational or vocational benefits that are not necessarily expected with all forms of employment." *Glatt*, 811 F.3d at 536. So too does the "primary

---

[6] The Second Circuit has held that FLSA and NYLL define "employee" in "nearly identical terms." *Glatt*, 811 F.3d at 534; *Velarde*, 914 F.3d at 785. Accordingly, this Court "construe[s] the NYLL definition as the same in substance as the definition in the FLSA." *Glatt*, 811 F.3d at 534; *Velarde*, 914 F.3d at 785.

beneficiary test allow[] courts to measure the extent to which the [university] meets these expectations against the economic benefits received by the [university] in the form of free labor." *Velarde*, 914 F.3d at 785.  And "[a]s with interns, disentangling the threads of a complex economic fabric and teasing out the respective benefits garnered by students and their [clinical] training programs is key to determining whether . . . a trainee is serving primarily as an employee of that [university]—or is *primarily* a student."  *Id*. (emphasis in original).  To answer this question, the primary beneficiary test assesses: "(1) the benefits of a relationship to the individual, (2) the benefits derived from that relationship by the putative employer, and (3) the expectations of the parties."  *Id*.  In *Glatt*, the Second Circuit listed several considerations that may, with others, be useful in determining which party is the "primary" beneficiary of a relationship considering the totality of the circumstances.[7]  811 F.3d at 536–37.

---

[7] The Second Circuit enumerated the following seven, non-exhaustive factors as relevant to the determination:

1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation.  Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.

2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.

3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.

4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.

5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

*Glatt*, 811 F.3d at 536–37.

Here, evaluating the totality of the circumstances presented by the Plaintiff's Complaint, it is clear that Plaintiff was the primary beneficiary of her relationship with NYU and, as a matter of law, was not an employee of the NYU Defendants for NYLL purposes.  It appears to be undisputed that Plaintiff was not compensated for her clinical hours, suggesting she was not an employee. *Gyatt*, 811 F.3d at 536–37 ("Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.").  Moreover, where the labor a student performs is required to meet state or professional standards, or consists of practical training, courts are less likely to find an employment relationship.  *Velarde*, 914 F.3d at 785 (holding vocational student was not an employee under the NYLL where school required that he complete the exact "number of hours required by the state of New York to qualify for licensure").  Additionally, where "the [work] is tied to the [student's] formal education program by integrated coursework or the receipt of academic credit," a student is less likely to be deemed an employee.  *Velarde*, 914 F.3d at 785.  Here, Plaintiff expressly admits in her allegations that she performed her clinical work to obtain "the requisite professional experience" and standardized "clinical credit hours" to both graduate from dental school and ultimately become certified to practice.  AC ¶ 146.

Indeed, in her opposition papers, Plaintiff entirely omits any reference to either the primary beneficiary test or the factors set forth in *Gyatt*.  Nor does she cite any case law—whether controlling or persuasive—in support of her claim that she is an employee under the NYLL.  The sole support upon which Plaintiff bases her claim is a "decision" issued by the National Labor Relations Board.  Pl. NYU Opp. at 18.  The Court is unpersuaded, particularly in light of the unequivocal Second Circuit case law directing the Court to apply the primary beneficiary test.  As discussed, Plaintiff was the primary beneficiary of her relationship with NYU and, therefore, was not an employee of the NYU Defendants under the NYLL.  Because Plaintiff is not an employee

under the NYLL, she cannot recover under this statute and her NYLL retaliation claims (Claims Eight and Nine) are dismissed.[8]

## IV.    Plaintiff Fails to Allege a Claim for Fraud.

Plaintiff also alleges that the NYU Defendants committed fraud by purportedly making false statements with regards to accommodations she was granted. AC ¶¶ 112–27.  More specifically, Plaintiff alleges that the NYU Defendants failed to inform her that the ADHD accommodations granted to her were applicable only to the first two academic years of the College of Dentistry curriculum (and not the subsequent two years), and such omissions were "material to Plaintiff's decision to enroll and/or remain enrolled in the College of Dentistry."  AC ¶¶ 112–27.

The NYU Defendants first argue that, as a threshold matter, Plaintiff's "bare recitation of the elements of a fraud claim" fails to satisfy the particularity required by Federal Rule of Civil Procedure 9(b), which sets forth a heightened pleading standard for allegations of fraud.  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); NYU Def. Mem. at 17.  Where, as here, the fraud is based on an omission and "the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 109 (2d Cir. 2001).  "But despite Rule 9(b)'s insistence on specificity when pleading fraud claims, 'it does not elevate the standard of certainty that a pleading must attain

---

[8] This holding is consistent with the law in other Circuits as well.  *See e.g.*, *Hollins v. Regency Corp.*, 867 F.3d 830, 836 (7th Cir. 2017) ("the fact that [cosmetology] students pay not just for the classroom time but also for the practical-training time is fundamentally inconsistent with the notion that during their time on the [salon floor] the students were employees."); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 531–32 (6th Cir. 2011) (holding that "[s]tudents engage[d] in courses of study that have been considered and approved by the state accrediting agency" were not employees of the eldercare facility in which they worked).

beyond the ordinary level of plausibility.' " *Pilat v. Amedisys, Inc.*, No. 23-566, 2024 WL 177990, at *2 (2d Cir. Jan. 17, 2024) (quoting *United States ex rel. Chorches for Bankr. Est. of Fabula v. American Medical Response, Inc.*, 865 F.3d 71, 88 (2d Cir. 2017)).

Putting aside, for the moment, whether Plaintiff's factual allegations actually support a claim for relief, Plaintiff satisfies the heightened pleading standard. Plaintiff alleges "what the omissions were" and the entities "responsible for the failure to disclose"—namely, the "NYU Defendants omitted to inform Plaintiff that the ADHD accommodations granted to Plaintiff were applicable only to the first two academic years." AC ¶ 98, 119, 120. Plaintiff additionally alleges "the context of the omissions and the manner in which they misled [her]"—namely, Plaintiff alleges that she "would not have enrolled and/or would not have remained enrolled in the College of Dentistry" if she had known the ADHD accommodations were applicable only to the first two academic years. AC ¶ 125. Finally, Plaintiff alleges that through their omissions, the NYU Defendants obtained tuition from Plaintiff as she remained enrolled in the College of Dentistry. AC ¶¶ 73–76. Such allegations satisfy the specificity requirement in Rule 9(b). *Odyssey*, 85 F. Supp. 2d at 293; *Pilat*, 2024 WL 177990, at *2.

Nevertheless, Plaintiff's fraud claim fails due to a more glaring deficiency. To state a claim for fraud under New York law, the plaintiff must allege, among other elements, "a material misrepresentation or omission of fact" and "*reasonable reliance* on the part of the plaintiff" on that misrepresentation or omission. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021). Here, Plaintiff alleges that she "*reasonably relied* on the NYU Defendants' grant of her ADHD accommodations when she decided to enroll and/or remain enrolled in the College of Dentistry" and that she "would not have enrolled and/or would not have remained enrolled in the College of Dentistry" if she had known the ADHD accommodations were applicable only to the first two academic years. AC ¶¶ 123–24. But these allegations are directly

20

belied by specific and explicit allegations in other parts of her Complaint.  Specifically, by her

own admission, Plaintiff enrolled in the College of Dentistry in the Fall of 2019.  *See* AC ¶ 1, 19.

And, by her own admission, Plaintiff did not request an accommodation until over a year later, in

December 2020, and did not obtain any accommodations until January 2021.  AC ¶¶ 21–22.

Therefore, Plaintiff's allegations that she "relied on the NYU Defendants' grant of her ADHD

accommodations when she decided to enroll" and "would not have enrolled and/or would

not have remained enrolled in the College of Dentistry" otherwise are directly contradicted by

her more detailed  allegations  that  she  had  already  enrolled  in  the  College  *before*

requesting any accomodation.  Even at the pleading stage, the Court is not required to accept

Plaintiff's contentions that are "contradicted by more specific allegations" in her own Complaint.

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

At bottom, Plaintiff's own allegations concede that she did not rely on the grant of her

accommodation for all four years to enroll in the College of Dentistry.  By her own admission, she

was admitted to and enrolled in the College of Dentistry well *before* she requested and obtained

an accommodation one and one-half years later.  *See* AC ¶ 1, 19, 21–22.  As a result, Plaintiff has

failed to allege that she "reasonabl[y] reli[ed]" on any purported misrepresentation or omission by

the NYU Defendants, and her fraud claim must be dismissed.  *Loreley*, 13 F.4th at 259; *see also*

*Basso v. New York Univ.*, 16-CV-7295 (VM), 2020 WL 7027589 at *11 (S.D.N.Y. 2020) (finding

that plaintiffs "cannot have an actionable fraud . . . claim based on allegedly untrue statements

[p]laintiffs relied on *after* they enrolled") (emphasis in original).

## V.    Plaintiff Fails to Allege a Claim for
## Negligent Misrepresentation.

Plaintiff's negligent misrepresentation claim against the NYU Defendants fails for the

same reasons as her fraud claim.  As in her fraud claim, in her negligent misrepresentation claim,

Plaintiff alleges that the NYU Defendants negligently misrepresented and failed to inform her that her ADHD accommodations only applied to her first two academic years at the College of Dentistry and not all four years. AC ¶¶ 94–98. Similarly, Plaintiff alleges that she "*reasonably relied* on the NYU Defendants' grant of her ADHD accommodations when she decided to enroll and/or remain enrolled in the College of Dentistry" and that she "would not have enrolled and/or would not have remained enrolled in the College of Dentistry" if she had known the ADHD accommodations were applicable only to the first two academic years. AC ¶¶ 102, 105.

But, as previously discussed, a plaintiff "cannot have an actionable fraud or negligent misrepresentation claim based on allegedly untrue statements Plaintiff[] relied on *after* [she] enrolled." *Basso*, 2020 WL 7027589, at *11. To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that she *reasonably relied* on [a false representation by defendant] to his or her detriment." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (emphasis added). Accordingly, "[t]o sustain a negligent misrepresentation claim, Plaintiff[] must have relied on NYU's representations *prior to* incurring any alleged harm." *Id.* at *14 (citing *Morin v. Trupin*, 711 F. Supp. 97, 104 (S.D.N.Y. 1989)). In other words, the plaintiff must have been harmed *by* the alleged misrepresentation. Here, Plaintiff alleges she was harmed when she enrolled, and continued to enroll, in the College of Dentistry. AC ¶¶ 102, 105. But the NYU Defendants' alleged misrepresentation—that her ADHD accommodations only applied to her first two academic years—occurred *after* she had already enrolled. Specifically, by Plaintiff's own statements in her Complaint, she was admitted to and enrolled in the College of Dentistry well *before* she requested and obtained an accommodation one and one-half years later. *See* AC ¶ 1, 19, 21–22. Thus, the alleged misrepresentation could not have caused the harm that Plaintiff alleges. As a result, the Court does not accept Plaintiff's belied and conclusory contentions that she relied on any purported misrepresentation or omission by the NYU

Defendants related to an accommodation when they are directly "contradicted by more specific allegations" in her own Complaint. *L-7 Designs*, 647 F.3d at 422. Plaintiff's negligent misrepresentation claim is therefore dismissed.

**VI.    Plaintiff's Negligent Infliction of Emotional
Distress Claim Fails on Several Grounds.**

Finally, the sole claim that Plaintiff asserts against Individual Defendant Lyubarsky is negligent infliction of emotional distress (Claim Seven).[9] AC ¶¶ 137–42. As an initial matter, "because the actions alleged here were intentional and deliberate and allegedly in their nature offensive, they are outside the ambit of actionable negligence." *Chau v. Donovan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019) (quoting *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 529 (S.D.N.Y. 2000)); *see also Corley v. Vance*, 365 F. Supp. 3d 407, 454 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) (same). Plaintiff argues in her opposition to the motion to dismiss that "[n]owhere in the Amended Complaint does Plaintiff allege that Defendant Lyubarsky acted intentionally." Pl. Lyubarsky Opp. at 2. However, her argument is belied by the explicit allegations in the Complaint in which she describes intentional and deliberate actions taken by Defendant Lyubarsky. In particular, Plaintiff alleges that Defendant Lyubarsky engaged in "hazing, harassment, and intimidation," including "scream[ing] at Plaintiff in front of patients and fellow students," "verbally abus[ing] Plaintiff," and "us[ing] Plaintiff's ID card to misappropriate expensive dental supplies and equipment in Plaintiff's name." AC ¶¶ 10, 26, 39, 41, 137–39. Such actions are unequivocally "intentional and deliberate and allegedly in their nature offensive." *Corley*, 365 F. Supp. 3d at 454; *Chau*, 357 F. Supp. 3d at 290. In short, the intentionality of the acts that Plaintiff alleges is indisputable from their nature as Plaintiff chose to plead them.

---

[9] This claim is not asserted against the NYU Defendants. AC ¶¶ 137–42.

The NYU Defendants argue that Plaintiff's choice of pleading may, indeed, be an attempt to circumvent the statute of limitations by couching her claim as negligent—as opposed to intentional—infliction of emotional distress.  As Plaintiff concedes, intentional infliction of emotional distress is governed by a one-year statute of limitations, while negligent infliction of emotional distress is governed by a three-year statute of limitations.  *Kramer v. Meridian Capital Group, LLC*, 201 A.D.3d 909, 912, 162 N.Y.S.3d 400 (2d Dep't 2022) (citing CPLR 214(3), (5)). All of Defendant Lyubarsky's alleged conduct underlying Plaintiff's negligent infliction of emotional distress claim occurred between Fall 2021 and Spring 2022.  AC ¶¶ 137–42.  In other words, if Plaintiff had plead an *intentional* infliction of emotional distress claim, it would be time-barred, but a *negligent* infliction of emotional distress would not.

Plaintiff counters that she is "the master of [her] claim," and she can choose whether to bring a claim against Defendant Lyubarsky for negligence or for an intentional tort, and "[i]n this case, Plaintiff chose to bring only one claim against Defendant Lyubarsky, which is for [negligent infliction of emotional distress]."  Pl. Lyubarsky Opp. at 2.  But while Plaintiff is generally permitted to plead different causes of action in the alternative, *see* Fed. R. Civ. P. 8(d)(2), like its sister courts in this District, "[t]his Court is mindful that New York Courts have rejected uniformly such attempts to transmogrify intentional torts into negligence."  *Corley*, 365 F. Supp. 3d at 454 (quoting *Wahlstrom*, 89 F. Supp. 2d at 532) (internal citations and quotations omitted); *Chau*, 357 F. Supp. 3d at 290; *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 107 (E.D.N.Y. 2015) ("[W]hen a plaintiff's factual allegations are only consistent with a theory of intentional, or perhaps reckless, conduct, negligence claims must be dismissed"); *Dineen ex rel. Dineen v. Stramka*, 228 F.Supp.2d 447, 454 (S.D.N.Y. 2002) ("Since plaintiff's claims against defendant are premised on intentional conduct, [the] claim for negligence must be dismissed."); *Trayvilla v. Japan Airlines*, 178 A.D.3d 746, 747, 111 N.Y.S.3d 224, 225 (2d Dep't 2019).

Plaintiff cannot resurrect a moribund intentional infliction of emotional distress claim by labeling it as negligence. Accordingly, Plaintiff's claim against Defendant Lyubarsky for negligent infliction of emotional distress is dismissed.

Moreover, even assuming *arguendo* that Plaintiff could properly assert a claim for negligent infliction of emotional distress, she fails to sufficiently allege that Defendant Lyubarsky owed her a duty of care. Any claim sounding in negligence under New York law, including negligent infliction of emotional distress, must be based in the breach of a legally cognizable duty of care. *Abdulaziz v. McKinsey & Co., Inc.*, No. 21-2921, 2022 WL 2444925, at *2 (2d Cir. July 5, 2022); *see Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232, 750 N.E.2d 1055 (2001) ("The threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?"), *opinion after certified question answered*, 264 F.3d 21 (2d Cir. 2001); *Sacino v. Warwick Valley Cent. Sch. Dist.*, 138 A.D.3d 717, 719, 29 N.Y.S.3d 57, 60 (2d Dep't 2016) ("A cause of action to recover damages for negligent infliction of emotional distress generally requires a plaintiff to show a breach of a duty owed to him which unreasonably endangered his physical safety, or caused him to fear for his own safety." (citations omitted)). "The determination whether or not a defendant had a cognizable duty of care is a legal question that the court must resolve." *Abdulaziz*, 2022 WL 2444925, at *2 (citing *Eiseman v. State*, 70 N.Y.2d 175, 187, 511 N.E.2d 1128 (N.Y. 1987) ("[T]he duty owed by one member of society to another is a legal issue for the courts." (citation omitted)).

Here, Plaintiff does not allege that Defendant Lyubarsky breached a duty of care that is cognizable under New York law. Notably, the duty must be "specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. United States*, 102 F.3d 693, 693 (2d Cir. 1996). Plaintiff cites only two New York trial court decisions in support of her position that a special duty of care arose between Defendant Lyubarsky and her when Lyubarsky was assigned

as Plaintiff's student mentor.  AC ¶ 25; Pl. Lyubarsky Opp. at 5 (citing *Oja v. Grand Chapter of Theta Chi Fraternity*, 174 Misc. 2d 966, 969 (Sup. Ct. Tompkins Co. 1997) and *Pepper v. Tau Kappa Epsilon Fraternity*, 2017 N.Y. Misc. LEXIS 7940, *10 (Sup. Ct. Dutchess Co. 2017)).  However, to the Court's knowledge, neither case that Plaintiff cites has ever been cited by any New York State courts, nor any courts within the Second Circuit for the proposition that a special relationship exists between student mentors and their mentees.  More importantly, both cases are clearly distinguishable.  In *Oja v. Grand Chapter of Theta Chi Fraternity*, the Tompkins County trial court denied a motion by a defendant fraternity to dismiss a negligence claim asserted by a father on behalf of his deceased son who died as the result of alcohol poisoning suffered in the course of a night of hazing conducted at the defendant fraternity.  174 Misc. 2d at 967.  In declining to dismiss, the court noted that "[n]o governing New York cases have been submitted to us," but found that a fraternity member may assume a duty to protect a pledge under his charge from the harmful consequences of alcohol consumption, where excessive drinking is a condition of obtaining membership in the fraternity, and where it is reasonably foreseeable and likely that injury could result as part of an initiation ceremony.  *Id*. at 969.  *Pepper v. Tau Kappa Epsilon Fraternity* similarly involved negligence claims asserted by a fraternity pledge against a fraternity member who supervised his initiation in connection with physical and psychological injuries he sustained during alcohol related hazing incidents.  2017 N.Y. Misc. LEXIS 7940, *3.

Here, there are no allegations that Plaintiff was subjected to alcohol-related hazing incidents causing severe physical harm.  Plaintiff instead attempts to argue that where an upperclassman in a professional graduate program, who is tasked with supervising Plaintiff's clinical work, is allegedly unkind or lazy, a special duty exists.  However, case law supports the opposite conclusion.  *See e.g.*, *Biehner v. City of New York*, No. 19-CV-9646 (JGK), 2021 WL 4924838, at *8 (S.D.N.Y. Oct. 20, 2021), *aff'd*, No. 21-2922, 2023 WL 3486237 (2d Cir. May 17,

2023) (holding plaintiff's allegation "that a special duty arises from the requirement that the defendants monitor, supervise and control [plaintiff] is insufficient" because "a relationship stemming from [an employer's] obligation to oversee their employees would not be unique to [p]laintiff"). Accordingly, the Complaint does not allege the existence of any sort of special relationship between Plaintiff and Defendant Lyubarsky which would give rise to a duty of care, and thus, Plaintiff's claim for negligent infliction of emotional distress is dismissed.

**VII.    Plaintiff is Denied Leave to Further Amend Her Complaint.**

Rule 15(a)(2) directs a court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the Court has discretion to deny a motion to amend where "there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). Plaintiff has already amended her Complaint once, even restyling and recharacterizing different causes of action presumably in attempt to cure deficiencies indicated by Defendants in their prior pre-motion letters. *See* [ECF Nos. 36, 39]. Plaintiff has failed to show that a second amendment of her already Amended Complaint would correct any of the deficiencies identified above. As such, the Court does not grant Plaintiff leave to amend any dismissed claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the NYU Defendants' motion to dismiss is GRANTED, and Defendant Lyubarsky's motion to dismiss is GRANTED. The Clerk of the Court is respectfully requested to terminate docket entries 50, 51, 52, 53, and 54 and close this case.

**SO ORDERED.**

Date:  September 4, 2024
       New York, NY

_____
**MARY KAY VYSKOCIL**
**United States District Judge**